**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WAZEE STREET Opportunities Fund IV LP, Douglas WHITLEY, and Lisa BROWN, On Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br> v.<br><br>THE UNITED STATES,<br><br>    Defendant. | No. 18-1124C (MMS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
<u>**MOTION FOR CLASS CERTIFICATION**</u>

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................... 1
II. Statement of facts .......................................................................................................... 1
III. The Proposed classes .................................................................................................... 3
IV. Argument ...................................................................................................................... 4
    A. The Requirements of Rule 23 ................................................................................ 4
    B. The Proposed Class Satisfies the Requirements of Rule 23(a) .................................. 4
        1. Rule 23(a)(1) Numerosity is Satisfied ..................................................... 4
        2. Rule 23(a)(2) Commonality is Satisfied .................................................. 5
        3. Rule 23(a)(3) Typicality is Satisfied ........................................................ 6
        4. Rule 23(a)(4) Adequacy is Satisfied ........................................................ 7
    C. The Proposed Class Satisfies the Requirements of Rule 23(b) .................................. 7
        1. Rule 23(b) Superiority is Satisfied ........................................................... 8
V. Conclusion .................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................................... 7

*Bell v. United States*,
    123 Fed. Cl. 390 (Fed. Cl. 2015) ...................................................................... 7, 8

*Fisher v. United States,*
    69 Fed. Cl. 193 (Fed. Cl. 2006) ........................................................................... 6

*Geneva Rock Prods., Inc. v. United States*,
    100 Fed. Cl. 778 (2011) ............................................................................... 5, 6, 8

*Haggart v. United States,*
    89 Fed. Cl. 523 (2009) ...................................................................................... 5, 7

*Starr Int'l Co., Inc. v. United States*,
    109 Fed. Cl. 628 (Fed. Cl. 2013) ................................................................. passim

Plaintiffs Wazee Street Opportunities Fund IV LP, Douglas Whitley, and Lisa Brown (collectively, "Plaintiffs"), hereby submit this memorandum of law in support of their Motion for Class Certification, filed simultaneously herewith.

## I.  INTRODUCTION

Plaintiffs brings this action on behalf of themselves and other similarly situated holders of Common Stock issued by the Federal National Mortgage Association ("Fannie Mae" or "Fannie") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" or "Freddie"; Fannie Mae and Freddie Mac together, the "Companies") and assert claims arising out of the wrongful conduct of the United States of America (the "Government") in connection with the implementation of the Third Amendment (the "Third Amendment") to the Senior Preferred Stock Purchase Agreements (the "PSPAs") between the Companies and the United States Treasury ("Treasury"), dated August 17, 2012.

By the accompanying motion, and pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiffs move for certification of two classes ("Classes"), as described below.

## II.  STATEMENT OF FACTS

Fannie Mae and Freddie Mac are stockholder-owned corporations.  Each was established by legislation and was later converted to a private corporation.  Both Companies are referred to as "Government Sponsored Enterprises" (or "GSEs"), and were created by Congress to increase liquidity in the secondary mortgage market.  The Companies purchase mortgages originated by private banks and bundle them into mortgage-related securities to be sold to investors.  By facilitating this secondary mortgage market, the Companies increase liquidity for private banks, which enables them to make additional loans to individuals for home purchases.  To raise capital,

the Companies issued several publicly traded securities, including numerous classes of non-cumulative Preferred Stock and common stock.

As a result of the market downturn in 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), creating a new federal agency, FHFA, and empowering it to appoint itself as conservator of the Companies under certain circumstances. On September 6, 2008, FHFA placed Fannie Mae and Freddie Mac into "temporary" conservatorship. When FHFA became Conservator, Fannie Mae and Freddie Mac each entered into the PSPAs with Treasury. Under these contracts, Treasury agreed to invest in the Companies in exchange for shares of a newly created class of securities, known as Senior Preferred Stock. The PSPAs provided that Treasury would hold a liquidation preference in each Company equal to the $1 billion commitment fee plus the total amount Treasury invested in each respective Company. The Senior Preferred Stock ranked senior in priority to all other series of Fannie Mae and Freddie Mac Preferred Stock and Common Stock, and would earn an annual dividend, paid quarterly, equal to 10% of the outstanding liquidation preference, i.e., 10% of the sum of the $1 billion commitment fee plus the total amount Treasury invested in each Company. If Fannie or Freddie elected not to pay the dividend in cash, Treasury would receive a dividend in the form of additional Senior Preferred Stock with a face value equal to 12% of the liquidation preference.

In 2012, after the housing market had begun to recover and the Companies were returning to profitability, Treasury and FHFA agreed to the Third Amendment, pursuant to which the 10% Senior Preferred Stock dividend was converted into a "Net Worth Sweep" that required the Companies to pay Treasury a dividend equal to the full amount of their net worth every quarter, minus a small reserve that was set to shrink to zero by 2018. And because the PSPAs provided that in the event of a liquidation of Fannie Mae or Freddie Mac, the Government would receive a

liquidation distribution that included the amount of any prior unpaid dividend, the Third Amendment guaranteed that even if the Companies were liquidated, Treasury would receive 100% of their net worth. Thus, the Net Worth Sweep made it impossible for any private shareholder ever to receive any dividend or liquidation distribution from the Companies, no matter how profitable they were.

The Government has reaped immense profits from the Third Amendment. In total, the Companies have paid $279.8 billion in dividends to Treasury. Of that amount, approximately $55 billion was paid before the Net Worth Sweep, and approximately $224.8 billion was paid after the Net Worth Sweep. This total amount of $279.8 billion is approximately $88.4 billion more than Treasury's total investment in the Companies. Moreover, as of the date of this filing, the total amount of dividends paid under the Net Worth Sweep is roughly $123.6 billion more than Treasury would have received under the 10% dividend provided for in the original PSPAs. Meanwhile, the principal amount of Treasury's Senior Preferred Stock has not been reduced at all, and still stands at $193.4 billion.

## III. THE PROPOSED CLASSES

Plaintiffs seek to certify two Classes consisting of:

(1) All persons and entities who held shares of Fannie Mae Common Stock on August 17, 2012 and who were damaged thereby, and their successors in interest (meaning current shareholders) (the "Fannie Common Class");

(2) All persons and entities who held shares of Freddie Mac Common Stock on August 17, 2012 and who were damaged thereby, and their successors in interest (meaning current shareholders) (the "Freddie Common Class").

Excluded from both Classes are the Defendants.

## IV.  ARGUMENT

### A.  The Requirements of Rule 23

A class action in the Court of Federal Claims is governed by RCFC 23.  Rule 23(a) provides that a class action may proceed only if the following prerequisites are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  RCFC 23(a).  Additionally, Rule 23(b) provides that for the class action to be maintainable, the Court must find that "the United States has acted or refused to act on grounds generally applicable to the class," that common questions of law and fact predominate, and that a class action is superior to other methods for adjudication of the controversy.  *See* RCFC 23(b); *Starr Int'l Co., Inc. v. United States*, 109 Fed. Cl. 628, 632 (Fed. Cl. 2013).  In the interests of judicial economy and efficiency, courts construe the requirements of Rule 23 liberally, "or at least not narrowly," in favor of class certification.  *Starr*, 109 Fed. Cl. at 632.

As demonstrated herein, Rules 23(a) and (b)(2) and (b)(3) are easily satisfied in this case.

### B.  The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.  Rule 23(a)(1) Numerosity is Satisfied

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable . . . ."  RCFC 23(a)(1).  As this court has noted in the past, "the numerosity criterion is somewhat peculiar in the context of an opt-in class action.  The Rules of the Court of Federal Claims demand that the class be 'so numerous that joinder of all members is impracticable.'  'Yet, for an opt-in class action, each participating member of the class must act affirmatively to participate, which amounts to joinder in pragmatic terms.'  Regardless of this apparent anomaly,

'joinder need only be impracticable, not impossible.'" *Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 787 (2011) (citations omitted).

Federal courts have taken various approaches to determining the number of putative class members required to satisfy the numerosity requirement. One popular view is that any class larger than forty is assumed to be sufficiently numerous. *See id* (ultimately certifying a class of twenty-three putative members). Regardless, each of the proposed Classes easily satisfies any test for numerosity, as there are hundreds of millions of shares of Common Stock outstanding, held by many thousands of Class members. Compl. ¶116. Accordingly, there is no doubt that joinder would be impracticable, to say the least.

### 2. Rule 23(a)(2) Commonality is Satisfied

Rule 23(a)(2) requires that "there are questions of law or fact common to the class[.]" RCFC 23(a)(2). The commonality inquiry consists of three sub-elements derived from separate parts of Rule 23: "(1) whether 'there are questions of law or fact common to the class,' RCFC 23(a)(2); (2) whether 'the United States has acted or refused to act on grounds generally applicable to the class,' RCFC 23(b)(2); and (3) whether those common questions 'predominate over any questions affecting only individual members,' RCFC 23(b)(3)." *Geneva Rock,* 100 Fed. Cl. at 788 (quoting *Haggart v. United States,* 89 Fed. Cl. 523, 532 (2009)). "Individual class members need not be identically situated to warrant a finding of commonality," but "[t]heir claims must depend upon a common contention," *Starr*, 109 Fed. Cl. at 633 (citations omitted). This common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

All aspects of the commonality inquiry are satisfied here for both the Fannie Common Class and the Freddie Common Class. For both Classes, the claims of the members "are based on

the same exact government action," the Third Amendment to the PSPAs, which destroyed the Common Stock holders' cash flow rights under any scenario. *Starr*, 109 Fed. Cl. at 633. Moreover, there are common questions of law and fact that predominate over any individualized questions, such as whether the Government took the Common Stockholders' property without just compensation; whether Government illegally exacted the Class members' property; whether the Government breached the terms of the shareholder contracts with the Fannie Common Stock holders, the Freddie Common Stock holders, and/or the implied covenant of good faith and fair dealing inherent in those contracts; and whether the Government is liable to the members of the Classes for just compensation or damages. The resolution of these issues will affect all members of the putative Classes, which itself satisfies the commonality question. *See Geneva Rock,* 100 Fed. Cl. at 789 ("A class shares a common question of law or fact when there is at least one issue whose resolution will affect all or a significant number of the putative class members.") (internal citation omitted); *Fisher v. United States,* 69 Fed. Cl. 193, 199 (Fed. Cl. 2006) ("The requirement for a common question of law is satisfied when there is one core common legal question that is likely to have one common defense.").

### 3. Rule 23(a)(3) Typicality is Satisfied

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." RCFC 23(a)(3). Typicality is intertwined with commonality, and the analysis of these two requirements "tends to merge." *Starr*, 109 Fed. Cl. at 634. To establish typicality, "[t]he named plaintiff need only show that its claims share the same essential characteristics as the claims of the class at large. Courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Id.* (citations omitted).

-6-

Here, Plaintiffs' claims share the same essential characteristics as the claims of the proposed Classes because they are based on the same factual and legal predicates. Plaintiffs and the putative Class members are holders of Fannie and/or Freddie Common Stock. Plaintiffs and the putative Class members seek a remedy for the same conduct premised upon the same legal theories. Thus, Plaintiffs' claims are typical of the Classes, and the typicality requirement is satisfied.

### 4. Rule 23(a)(4) Adequacy is Satisfied

The fourth and final prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a)(4). This requires that the "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Bell v. United States*, 123 Fed. Cl. 390, 402 (Fed. Cl. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.*

Plaintiffs have no interests that are adverse or antagonistic to the Classes. Rather, the interests of Plaintiffs and the proposed Class members "are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same government actions." *Starr*, 109 Fed. Cl. at 635 (citing *Haggart,* 89 Fed. Cl. at 535). Within each Class, the members have identical interests, proportionate to their shareholdings. Further, Plaintiffs have retained competent counsel well versed in prosecuting class action litigation. Accordingly, the adequacy requirement is met.

### C. The Proposed Class Satisfies the Requirements of Rule 23(b)

Once the prerequisites of Rule 23(a) are satisfied, a class action may be certified if Rules 23(b)(2) and (b)(3) are met.

### 1. Rule 23(b) Superiority is Satisfied

To satisfy Rule 23(b), Plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Bell*, 123 Fed. Cl. at 404. This analysis is related to the commonality analysis discussed above. Whether a class action is superior to other available methods involves consideration of the class members' interests in individually controlling the prosecution of separate actions; the extent and nature of any litigation concerning the controversy already begun by class members; and the likely difficulties in managing a class action. RCFC 23(b)(3). To determine whether the superiority element is met, courts engage in "a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Starr*, 109 Fed. Cl. at 636.

As the Court in *Starr* noted, "[h]ere, such a cost/benefit analysis tips decidedly in favor of class certification. Litigating the claims of both putative classes in one action will achieve economies of scale in time, effort and expense, because all plaintiffs within each class are affected by the same government action." *Starr*, 109 Fed. Cl. at 636 (citations omitted). The same is true here. The members of both the Fannie Common Class and the Freddie Common Class were affected by the same Government action, and each putative Class member was affected in the same way. Thus, a class action "would resolve numerous claims in a single action, sparing the litigants the time and expense of multiple trials." *Geneva Rock*, 100 Fed. Cl. at 791. Superiority under Rule 23(b) is therefore satisfied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant Plaintiff's motion to certify the Classes.

Dated: August 16, 2018

OF COUNSEL:

*Interim Co-Lead Class Counsel*

Respectfully Submitted,

*/s/ Hamish P.M. Hume*

Hamish P.M. Hume
*Attorney of Record*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
Stacey K. Grigsby
Jonathan M. Shaw
James A. Kraehenbuehl
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
sgrigsby@bsfllp.com
jshaw@bsfllp.com
jkraehenbuehl@bsfllp.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Eric L. Zagar
Lee D. Rudy
Grant Goodhart
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com
lrudy@ktmc.com
ggoodhart@ktmc.com