IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 18-1124C
(Senior Judge Margaret M. Sweeney)

WAZEE STREET OPPORTUNITIES FUND IV LP, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

|  | BRIAN M. BOYNTON |
|---|---|
|  | Principal Deputy Assistant Attorney General |
|  |  |
|  | PATRICIA M. McCARTHY |
|  | Director |
| OF COUNSEL: |  |
| FRANKLIN E. WHITE, JR. | ELIZABETH M. HOSFORD |
| Assistant Director | Assistant Director |
| RETA E. BEZAK |  |
| Senior Trial Counsel | ANTHONY F. SCHIAVETTI |
|  | Senior Trial Counsel |
| MARIANA T. ACEVEDO | U.S. Department of Justice |
| Trial Attorney | Civil Division |
|  | Commercial Litigation Branch |
|  | PO Box 480, Ben Franklin Station |
|  | Washington, D.C. 20044 |
|  | Tel: (202) 305-7572 |
|  | anthony.f.schiavetti@usdoj.gov |
| September 8, 2023 | Attorneys For Defendant |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

QUESTIONS PRESENTED ..................................................................................................... 3

STATEMENT OF THE CASE ................................................................................................. 3

I.      Background .................................................................................................................... 3

        A.      The Enterprises ................................................................................................... 3

        B.      The 2008 Financial Crisis, HERA, And The Conservatorships ........................... 4

        C.      Treasury's Stock Purchase Agreements With The Enterprises ............................ 6

II.     Procedural History ........................................................................................................ 7

ARGUMENT ......................................................................................................................... 12

I.      Standard Of Review .................................................................................................... 12

        A.      Rule 12(b)(1) .................................................................................................... 12

        B.      Rule 12(b)(6) .................................................................................................... 13

II.     Preclusion Bars Many Of Plaintiffs' Claims ............................................................... 14

        A.      Res Judicata Principles – Issue And Claim Preclusion Generally ...................... 14

        B.      Preclusion In Shareholder Derivative Suits ...................................................... 15

        C.      Plaintiffs' Constitutional Claims Are Derivative And Precluded By
                *Fairholme* ....................................................................................................... 18

        D.      Plaintiffs' Derivative, Non-Constitutional Claims Are Precluded By
                Both The *Fairholme* And *Perry* Cases ............................................................ 20

III.    *Fairholme* Binds This Court And Requires Dismissal Of Counts I-IX Of
        Plaintiffs' Second Amended Complaint ....................................................................... 22

        A.      Counts I-III Are Substantively Derivative And Belong To The Enterprises;
                Plaintiffs May Not Bring These Claims On Their Own Behalf ............................ 23

B.     Plaintiffs' Contract Claims, Asserted In Counts IV-VII, Fail As A
       Matter Of Law.................................................................................24

C.     The Court Does Not Possess Jurisdiction To Entertain Plaintiff's
       Breach Of Fiduciary Duty Claim In Count VIII.....................................25

D.     To The Extent That Count IX Pleads Non-Constitutional Derivative
       Claims, They Are Barred By HERA's Succession Clause ........................26

E.     Plaintiffs' Derivative Takings And Illegal Exaction Claims In Count IX
       Fail As A Matter Of Law ....................................................................26

IV.   As Plaintiffs Acknowledge, Binding Precedent Holds That This Court Does
      Not Possess Jurisdiction To Entertain Their Unjust Enrichment Claims In
      Counts X And XI ....................................................................................27

CONCLUSION.............................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Acceptance Ins. Cos. v. United States,*
  583 F.3d 849 (Fed. Cir. 2009) ......................................................................... 13

*Amgen Inc, v. U.S. Int'l Trade Comm'n,*
  902 F.2d 1532 (Fed. Cir. 1990) ....................................................................... 22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................................... 13

*Avant Assessment, LLC v. United States,*
  159 Fed. Cl. 632 (2022) .................................................................................... 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................................... 13

*Bowers Inv. Co., LLC v. United States,*
  695 F.3d 1380 (Fed. Cir. 2012) ....................................................................... 15

*Citizens Elecs. Co., Ltd. v. OSRAM GmBH,*
  225 F. App'x 890 (Fed. Cir. 2007) .................................................................. 22

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ............................................................................... passim

*Copar Pumice Co. v. United States,*
  112 Fed. Cl. 515 (2013) .............................................................................. 14, 28

*Corrigan v. United States,*
  82 Fed. Cl. 301 (2008) ...................................................................................... 13

*Cottrell v. Duke,*
  737 F.3d 1238 (8th Cir. 2013) ..................................................................... 15, 16

*Cross Country Indus., Inc. v. United States,*
  231 Ct. Cl. 899 (1982) ...................................................................................... 28

*Fairholme Funds, Inc. v. United States,*
  147 Fed. Cl. 1 (2019), *aff'd in part, rev'd in part,* 26 F.4th 1274 ..................... 16, 24

*Fairholme Funds, Inc. v. Unit*ed States,
  26 F.4th 1274 (Fed. Cir. 2022*), cert. deni*ed, 143 S. Ct. 563 (2023), and *cert. denied sub nom.*
  *Barrett v. United Stat*es, 143 S. Ct. 562 (2023), and *cert. denied sub nom. Owl Creek Asia I,*
  *L.P. v. United Stat*es, 143 S. Ct. 563 (2023), and *cert. denied sub nom. Cacciapalle v. United*
  *States,* 143 S. Ct. 563 (2023) .............................................................................. passim

*Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*,
    493 U.S. 331 (1990) ................................................................... 23

*Hercules, Inc. v. United States*,
    516 U.S. 417 (1996) ................................................................... 28

*Hopi Tribe v. United States*,
    782 F.3d 662 (Fed. Cir. 2015) ................................................... 25

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ......................................................... 5

*In re Sonus Networks, Inc, S'holder Derivative Litig.*,
    499 F.3d 47 (1st Cir. 2007) ........................................................ 16

*John R. Sand & Gravel Co. v. United States*,
    457 F.3d 1345 (Fed. Cir. 2006) ................................................. 13

*Lea v. United States*,
    126 Fed. Cl. 203 (2016) ........................................................ 15, 22

*Lewis v. United States*,
    99 Fed. Cl. 772 (2011) ............................................................... 14

*Matthews v. United States*,
    72 Fed. Cl. 274 (2006) ............................................................... 12

*Mendez v. United States*,
    121 Fed. Cl. 370 (2015) ............................................................. 28

*Nathan v. Rowan*,
    651 F.2d 1223 (6th Cir. 1981) ................................................... 15

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................... 14

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015) ..................................................... 5

*Perry Cap. LLC v. Lew* (*Perry I*),
    70 F. Supp. 3d 208 (D.D.C. 2014), *aff'd in part, rev'd in part and remanded sub nom.*
    *Perry Cap. LLC v. Mnuchin* (*Perry II*), 848 F.3d 1072 (D.C. Cir. 2017), *amended and*
    *superseded on reh'g,* 864 F.3d 591 (D.C. Cir. 2017) .................................... 10, 18, 26

*Perry Cap. LLC v. Mnuchin* (*Perry II*),
    864 F.3d 591 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 978 (2018) ................................ passim

*PIN/NIP, Inc. v. Platte Chem. Co.*,
  304 F.3d 1235 (Fed. Cir. 2002) ................................................................ 12

*Ramos v. United States*,
  112 Fed. Cl. 79 (2013) ............................................................................ 21

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ................................................................... 14, 15, 18

*Trauma Serv. Grp. v. United States*,
  104 F.3d 1321 (Fed. Cir. 1997) ................................................................ 28

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
  338 F.3d 1353 (Fed. Cir. 2003) ................................................................ 12

*United States v. LTV Corp.*,
  746 F.2d 51 (D.C. Cir. 1984) ................................................................... 16

## **Statutes**

12 U.S.C. § 1455*(l)*(1) ................................................................................ 6

12 U.S.C. § 1719(g)(1) ................................................................................ 6

12 U.S.C. §§ 4501-4641 ........................................................................... 1, 4

12 U.S.C. § 4501(4) .................................................................................... 4

12 U.S.C. § 4503 ........................................................................................ 4

12 U.S.C. § 4511 ........................................................................................ 4

12 U.S.C. § 4617 ........................................................................................ 5

28 U.S.C. § 2501 ...................................................................................... 13

Federal Housing Enterprises Financial Safety and Soundness Act (FHEFSSA),
  Pub. L. 102–550, 106 Stat. 3672 (1992) .................................................... 4

Housing and Economic Recovery Act of 2008 (HERA),
  Pub. L. No. 110-289, 122 Stat. 2654 (2008) ............................................... 1

## **Rules**

RCFC 12(b)(1) .......................................................................................... 12

RCFC 12(b)(6) .......................................................................................... 13

RCFC 12(h)(3) ................................................................................................................ 13

**Other Authorities**

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
Federal Practice and Procedure § 4435 (3d ed. 2019) ............................................ 21

Certificate of Designation of Terms of Variable Liquidation Preference Senior
Preferred Stock, Series 2008-2, available at https://go.usa.gov/xUyNA (Fannie Mae)
and https://go.usa.gov/xUyN6 (Freddie Mac) ........................................................ 7

Fannie Mae, 2017 Annual Report (Form 10-K) (Fannie 2017 10-K) (Feb. 14, 2018),
*available at* https://fanniemae.gcs-web.com/static-files/5e4a8dbd-9ad7-464b-a580-
dfcd677219b7 ......................................................................................................... 5

Freddie Mac, 2017 Annual Report (Form 10-K) (Freddie 2017 10-K),
*available at* http://www.freddiemac.com/investors/financials/pdf/10k_021518.pdf ................ 5

Preferred Stock Purchase Agreements, available at https://go.usa.gov/xUyCz (Fannie Mae)
and https://go.usa.gov/xUyCu (Freddie Mac) ..................................................... 6, 7

Third Amendment to Senior Preferred Stock Purchase Agreements, *available at* at
https://go.usa.gov/xUyaM (Fannie Mae) and https://go.usa.gov/xUyae (Freddie Mac) ............ 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WAZEE STREET OPPORTUNITIES )
FUND IV LP, et al., )
)
Plaintiffs, )
)
v. )        No. 18-1124C
)        (Senior Judge Margaret M. Sweeney)
THE UNITED STATES, )
)
Defendant. )

<u>DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court

dismiss the second amended complaint filed by plaintiffs, Wazee Street Opportunities Fund IV

LP, Wazee Street Opportunities Fund V LP, Douglas Whitley, Lisa Brown, and the purported

classes they seek to represent, for lack of subject matter jurisdiction and for failure to state a

claim upon which relief can be granted.  In support of this motion, the United States relies upon

the second amended complaint and the following brief.

<u>INTRODUCTION</u>

In 2008, in the midst of an unprecedented financial crisis centered around the collapse of

the housing and financial markets, Congress enacted the Housing and Economic Recovery Act of

2008 (HERA), Pub. L. No. 110-289, 122 Stat. 2654 (2008) (12 U.S.C. §§ 4501-4642), to

stabilize the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan

Mortgage Corporation (Freddie Mac) (collectively, the Enterprises), which stood on the brink of

insolvency.  HERA created the Federal Housing Finance Agency (FHFA) and authorized its

Director, *inter alia,* to appoint the Agency as conservator or receiver for the Enterprises.

Congress also authorized the Treasury Department to invest in the Enterprises to provide the

extraordinary infusion of taxpayer funds that would be necessary to ensure their ongoing viability.  The Director of FHFA placed both Enterprises into conservatorships on September 6, 2008, and the conservator immediately entered into agreements with Treasury to secure the financial lifeline that the Enterprises needed.  On August 17, 2012, Treasury and FHFA, as conservator of the Enterprises, agreed to a Third Amendment to their Senior Preferred Stock Purchase Agreements (PSPAs), amending the dividend structure in their agreement to help ensure the Enterprises' financial stability.

In this suit, plaintiffs bring a variety of claims challenging the Third Amendment. Plaintiffs acknowledge, however, that each of their claims must be dismissed under binding Federal Circuit precedent.  Nine of their claims carry over from their original 2018 complaint; the substance of each of these claims was rejected by the Federal Circuit in *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1282 (Fed. Cir. 2022), *cert. denied,* 143 S. Ct. 563 (2023), and *cert. denied sub nom. Barrett v. United States*, 143 S. Ct. 562 (2023), and *cert. denied sub nom. Owl Creek Asia I, L.P. v. United States*, 143 S. Ct. 563 (2023), and *cert. denied sub nom. Cacciapalle v. United States*, 143 S. Ct. 563 (2023).  In their second amended complaint, plaintiffs add two claims for unjust enrichment, but acknowledge that these claims must also be dismissed under binding Federal Circuit precedent.

The parties, therefore, agree that binding precedent requires the dismissal of each of plaintiffs' claims in the second amended complaint.  The parties disagree, however, regarding claim and issue preclusion.  Plaintiffs argue that they were not parties in any of the cases addressed by the Federal Circuit in *Fairholme* and are not precluded from pursuing the same claims.  We demonstrate below that this is not correct; plaintiffs, like the plaintiffs whose claims the Federal Circuit rejected in *Fairholme*, bring many of their claims derivatively on behalf of

the Enterprises, which are the real parties in interest.  Because the Federal Circuit has already conclusively rejected these claims when asserted derivatively by shareholders, they cannot be relitigated here.

Because it is the only point on which the parties disagree, preclusion is the focus of this brief.  For clarity, however, although the parties agree that binding precedent requires dismissal of all plaintiffs' claims, we will briefly explain for each claim why that is so.  Finally, we will briefly explain why this Court does not possess jurisdiction to entertain plaintiffs' new unjust enrichment claims, which they agree must be dismissed under binding precedent.

<u>QUESTIONS PRESENTED</u>

1.      Whether preclusion principles bar plaintiffs from litigating many of their claims.

2.      Whether binding precedent of the Federal Circuit considering similar claims in *Fairholme* requires dismissal of Counts I-IX of plaintiffs' second amended complaint.

3.      Whether the Court possesses jurisdiction to consider the unjust enrichment claims pleaded in Counts X and XI of the second amended complaint.

<u>STATEMENT OF THE CASE</u>

I.      <u>Background</u>

        A.      <u>The Enterprises</u>

Congress created Fannie Mae in 1938 and Freddie Mac in 1970.  Second Amended Complaint, ECF No. 30, ¶ 24; *see also Collins v. Yellen*, 141 S. Ct. 1761, 1770 (2021).  The Enterprises operate as for-profit corporations with private shareholders, though they serve a public mission.  Second Am. Compl. ¶ 24; *see also Collins*, 141 S. Ct. at 1770.  The Enterprises purchase residential loans from banks and other lenders, facilitating the ability of lenders to make additional loans.  Second Am. Compl. ¶ 24; *see also Collins*, 141 S. Ct. at 1771.  These

activities increase the liquidity of the national home lending market and promote access to

mortgage credit.  Second Am. Compl. ¶ 24; *see also Collins*, 141 S. Ct. at 1771.

Over the years, both Enterprises issued multiple series of preferred and common stock.

Second Am. Compl. ¶¶ 25, 28.  Although the Enterprises are government-sponsored, the statute

that has governed regulation of the Enterprises since 1992—the Federal Housing Enterprises

Financial Safety and Soundness Act (FHEFSSA), Pub. L. 102–550, §§ 1301-95, 106 Stat. 3672,

3941-4012 (1992) (12 U.S.C. §§ 4501-4641), which was amended by HERA in 2008—contains

two separate provisions specifying that their securities are not guaranteed by the Federal

Government:

> The Congress finds that . . . neither the enterprises . . . , nor any
> securities or obligations issued by the enterprises . . . , are backed by
> the full faith and credit of the United States.

12 U.S.C. § 4501(4).

> This chapter may not be construed as implying that any such
> enterprise . . . , or any obligations or securities of such an enterprise
> . . . , are backed by the full faith and credit of the United States.

*Id.* § 4503.

B.    The 2008 Financial Crisis, HERA, And The Conservatorships

By 2007, the Enterprises owned or guaranteed more than $5 trillion in residential

mortgage assets, nearly half the national mortgage market.  *Collins*, 141 S. Ct. at 1771.

Beginning in 2008, the Enterprises suffered overwhelming losses because of the collapse of the

housing market.  Second Am. Compl. ¶ 39; *id*.  The Enterprises lost more in 2008 than they had

earned in the prior 37 years combined.  *Collins*, 141 S. Ct. at 1771.

In response to this crisis, Congress enacted HERA.  HERA created FHFA to regulate and

supervise the Enterprises.  12 U.S.C. § 4511.

4

HERA also authorized FHFA's Director to appoint FHFA as conservator or receiver of the Enterprises.  12 U.S.C. § 4617(a).  The Director exercised this authority on September 6, 2008, placing both Fannie Mae and Freddie Mac into conservatorships.  Second Am. Compl. ¶ 32; *Collins*, 141 S. Ct. at 1772.

In what is known as its "Succession Clause," HERA provides that, upon its appointment as the conservator or receiver, FHFA will "immediately succeed to . . . all rights, titles, powers, and privileges of the regulated entity [*i.e.*, Fannie Mae and Freddie Mac], and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity."  12 U.S.C. § 4617(b)(2)(A)(i).  The statute accords FHFA as conservator the power to "operate" and "conduct all business" of the Enterprises, *id.* § 4617(b)(2)(B)(i), including the power to take such action as may be "appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity," *id.* § 4617(b)(2)(D)(ii), and to "transfer or sell" any of the Enterprises' assets or liabilities, *id.* § 4617(b)(2)(G).  Immediately upon declaration of the conservatorships, FHFA as conservator announced that the Enterprises would not pay common or preferred stock dividends during conservatorship.  *See* Fannie Mae, 2017 Annual Report (Form 10-K) (Fannie 2017 10-K) at 13, 36 (Feb. 14, 2018); Freddie Mac, 2017 Annual Report (Form 10-K) (Freddie 2017 10-K) at 190 (Feb. 15, 2018).[1]

---

[1]  *Available at* https://fanniemae.gcs-web.com/static-files/5e4a8dbd-9ad7-464b-a580-dfcd677219b7 (Fannie 2017 10-K);
http://www.freddiemac.com/investors/financials/pdf/10k_021518.pdf (Freddie 2017 10-K). The Court may take judicial notice of information contained in SEC filings on a motion to dismiss.  *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 354 n.5 (2d Cir. 2010); *see also Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015).

C.      Treasury's Stock Purchase Agreements With The Enterprises

In addition to laying out the powers and functions of the conservator, HERA amended the Enterprises' statutory charters to grant Treasury the authority to purchase securities issued by the Enterprises, so long as Treasury and the Enterprises reached "mutual agreement" on the terms. *See* 12 U.S.C. § 1719(g)(1)(A) (Fannie Mae); 12 U.S.C. § 1455*(l)*(1)(A) (Freddie Mac).  That authorization "made it possible for Treasury to buy large amounts of Fannie and Freddie stock, and thereby infuse them with massive amounts of capital to ensure their continued liquidity and stability."  *Perry Cap. LLC v. Mnuchin* (*Perry II*), 864 F.3d 591, 600 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 978 (2018).  Congress required Treasury to determine that exercising its new statutory authority to acquire securities of the Enterprises was necessary to "protect the taxpayer," among other things.  12 U.S.C. §§ 1719(g)(1)(C), 1455(*l*)(1)(C).

On September 7, 2008, FHFA, as conservator, entered into two Senior Preferred Stock Purchase Agreements (PSPAs), one for each Enterprise, with the Department of Treasury, under which Treasury committed to provide $100 billion to each Enterprise by purchasing the Enterprises' stock.  Second Am. Compl. ¶ 46; *Collins*, 141 S. Ct. at 1772-73.[2]  In return for this massive and continuing commitment, Treasury received a comprehensive bundle of rights, including:  (1) a senior liquidation preference that started at $1 billion per Enterprise and would increase dollar-for-dollar whenever the Enterprises drew Treasury funds; (2) a requirement that the Enterprises pay Treasury a 10 percent annual dividend, assessed quarterly, based on the total amount of the liquidation preference; (3) an annual fee (known as the "periodic commitment fee") intended to compensate Treasury for its ongoing commitment; and (4) warrants to acquire

---

[2]  The stock purchase agreements are available at https://go.usa.gov/xUyCz (Fannie Mae) and https://go.usa.gov/xUyCu (Freddie Mac).

up to 79.9 percent of the Enterprises' common stock.  *See* PSPA §§ 1, 3.1, 3.2; Certificate of

Designation of Terms of Variable Liquidation Preference Senior Preferred Stock, Series 2008-2

§ 2(c);[3] *see also Collins,* 141 S. Ct. at 1773*;* Second Am. Compl. ¶ 46.  The PSPAs precluded the

payment of dividends to any entity other than Treasury without Treasury's prior approval.

Second Am. Compl. ¶ 46; PSPA § 5.1.  FHFA as conservator and Treasury subsequently

amended the PSPAs twice, both times to raise the amount of Treasury's commitment.

On August 17, 2012, FHFA, as the Enterprises' conservator, and Treasury executed the

Third Amendment to the stock purchase agreements, which, among other things, replaced the

fixed 10 percent dividend with a variable quarterly dividend equal to the net worth of the

Enterprises (minus a small capital reserve).  Second Am. Compl. ¶ 64; *see also* Third

Amendment to Senior Preferred Stock Purchase Agreements, *available at*

https://go.usa.gov/xUyaM (Fannie Mae) and https://go.usa.gov/xUyae (Freddie Mac).  In other

words, under the Third Amendment, "Fannie and Freddie pay whatever dividend they could

afford—however little, however much . . . .  If Fannie and Freddie made profits, Treasury would

reap the rewards; if they suffered losses, Treasury would have to forgo payment entirely."  *Perry*

*II*, 864 F.3d at 612.  Plaintiffs refer to the Third Amendment's variable dividend structure as a

"Net Worth Sweep."  Second Am. Compl. ¶ 9.

II.    Procedural History

Plaintiffs originally filed this suit on August 1, 2018, nearly six years after the Third

Amendment took effect.  ECF No. 1.  The original complaint pleaded nine counts on behalf of

the three named plaintiffs and a purported class of holders of shares of common stock in Fannie

---

[3]  The Senior Preferred Stock Certificates of Designation are available at
https://go.usa.gov/xUyNA (Fannie Mae) and https://go.usa.gov/xUyN6 (Freddie Mac).

Mae and/or Freddie Mac.  *Id.*  In the original complaint, plaintiffs alleged that the Third

Amendment constituted a taking for which they are entitled to just compensation, and/or an

illegal exaction.  *Id.* at ¶¶ 121-29, 137-46.  Plaintiffs also alleged that HERA took the right to file

certain derivative lawsuits, entitling them to just compensation.  *Id.* at ¶¶ 130-36.  Moreover,

plaintiffs pleaded several contract claims alleging that the Third Amendment constituted an

anticipatory repudiation or breach of their shareholder contracts and/or their implied covenant of

good faith and fair dealing.  *Id.* at ¶¶ 147-87.  Plaintiffs also alleged that the Third Amendment

constituted a breach of fiduciary duty allegedly owed to them by FHFA.  *Id.* at ¶¶ 188-96.

Finally, in the alternative, to the extent that any of their allegedly direct claims were held to be

derivative, plaintiffs purported to bring them instead derivatively on behalf of Fannie Mae.  *Id.* at

¶¶ 197-204.  Plaintiffs filed a motion for class certification on August 16, 2018.  ECF No. 5.

    On August 29, 2018, the parties filed a joint motion to stay proceedings in the case

pending the Court's resolution of the Government's omnibus motion to dismiss to dismiss the

complaints in *Fairholme Funds, Inc. v. United States*, No. 13-465C, and 11 other cases that had

been coordinated with *Fairholme* for briefing, because those cases raised claims nearly identical

to those raised in this case, each of which was addressed in our motion.  ECF No. 7.  The Court

granted the stay the following day.  ECF No. 8.  The stay continued through the Court's

resolution of the omnibus motion to dismiss as well as interlocutory appeals following therefrom.

*See* ECF Nos. 12, 13, 20.

    On February 22, 2022, the United States Court of Appeals for the Federal Circuit issued

its opinion and judgment in these interlocutory appeals.  *Fairholme*, 26 F.4th at 1282.  The

Federal Circuit affirmed this Court's dismissal of some of plaintiffs' claims and reversed the

Court's decision not to dismiss the others, holding that all of plaintiffs' claims should be

dismissed. *Id.* at 1305. The mandate issued on April 15, 2022. *Fairholme Funds, Inc. v. United States*, No. 13-465C, ECF No. 473. The *Fairholme* appellants, among others, petitioned for a writ of certiorari from the Supreme Court. On January 9, 2023, the Supreme Court denied the petitions.

In *Fairholme*, the Federal Circuit held that claims closely mirroring the claims in this case all failed as a matter of law. The Federal Circuit held that plaintiffs' purportedly direct takings and illegal exaction claims were substantively derivative and, thus, did not state a claim upon which relief may be granted. 26 F.4th 1288-92. The Court also rejected a separate claim, mirroring Count II in plaintiffs' second amended complaint, alleging that HERA's transfer to FHFA of shareholders' right to bring derivative claims constituted a taking. *Id.* at 1292-93.

The Federal Circuit likewise rejected shareholders' directly-pleaded non-constitutional claims. The Court found that shareholders' contract claims failed as a matter of law because they did not plausibly allege either privity with the United States or that the shareholders enjoyed third-party beneficiary status on any contract, express or implied, between FHFA and the Enterprises. *Id.* at 1293-94. The Federal Circuit also rejected the "creative" shareholder argument that because FHFA, through HERA's Succession Clause, succeeded to the Enterprises' contractual obligations, privity with the United States was established. Instead, the Court held that, "[i]n succeeding to the Enterprises' private contractual agreement with [shareholders], . . . FHFA does not retain its governmental character." *Id.* at 1295.

The Federal Circuit held that the Court of Federal Claims did not possess subject matter jurisdiction to entertain shareholders' breach of fiduciary duty claims because shareholders failed to allege a breach of any fiduciary duty that the Government had accepted by statute or regulation, or that was grounded in a contract. *Id.* at 1296-99. The Federal Circuit found that

neither HERA nor the PSPAs imposed a fiduciary duty owed to shareholders by either FHFA or Treasury.  *Id*.

Additionally, the Federal Circuit held that all the derivative shareholder claims failed as a matter of law.  The Court held that shareholders had already litigated and lost the issue of whether HERA's Succession Clause bars non-constitutional shareholder derivative claims in the United States District Court for the District of Columbia, a holding that was affirmed by the United States Court of Appeals for the District of Columbia Circuit.  *Id*. at 1299-1301 (citing *Perry Cap. LLC v. Lew* (*Perry I*), 70 F. Supp. 3d 208, 229-30 (D.D.C. 2014), *aff'd in part, rev'd in part and remanded sub nom. Perry Cap. LLC v. Mnuchin* (*Perry II*), 848 F.3d 1072 (D.C. Cir. 2017), *amended and superseded on reh'g,* 864 F.3d 591 (D.C. Cir. 2017)).  Shareholders, therefore, were precluded from relitigating this issue in the Court of Federal Claims.  *Fairholme*, 26 F.4th at 1301.

Although the Federal Circuit declined to find that shareholders were also precluded from bringing derivative constitutional claims, which were not decided in the *Perry* cases, the Federal Circuit found that these claims nevertheless failed as a matter of law.  The Court rejected shareholders' derivative takings claims because they were not grounded in a cognizable property interest, as the Enterprises lacked the right to exclude the Government from their property, including their net worth.  *Id*. at 1302-03.  The Federal Circuit held that shareholders' derivative illegal exaction claims failed for this same reason, and also because the Supreme Court conclusively determined in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), that because the Third Amendment was well within FHFA's authority, shareholders could not state a plausible illegal exaction claim.  *Fairholme*, 26 F.4th at 1304.

After the Supreme Court declined to review the Federal Circuit's decision, rendering the decision final, the parties filed status reports regarding further proceedings in this case.  *See* ECF Nos. 20, 21.  The United States stated that no further proceedings should be necessary because *Fairholme* binds this Court and foreclosed all of plaintiffs' claims.  ECF No. 20.  Plaintiffs agreed, stating that *Fairholme* "constitutes binding precedent that requires this Court to dismiss the claims advanced in the above-captioned case."  ECF No. 21 at 1.  Plaintiffs, however, alleged that "since they were not parties in any of the cases addressed in the *Fairholme* decision, that decision is not collateral estoppel or *res judicata*, but instead is merely binding precedent."  *Id*. Plaintiffs requested more time to consider amending their complaint, *id*. at 2, which the Court granted, ECF No. 22.

On February 27, 2023, plaintiffs filed their first amended complaint.  ECF No. 23. Plaintiffs also filed a notice explaining that the first amended complaint added additional claims for unjust enrichment.  ECF No. 24 at 2.  Plaintiffs "acknowledge[d] [that] binding Federal Circuit precedent holds that the Court lacks jurisdiction to entertain an unjust enrichment claim under the Tucker Act," but stated that they "intend to petition for *en banc* review of that precedent."  *Id*.  Moreover, plaintiffs again acknowledged that the Federal Circuit's decision in *Fairholme* "constitutes binding precedent that requires this Court to dismiss the other claims advanced in the above-captioned case," but stated that they "intend to seek *en banc* review of any dismissal of their complaint under *Fairholme*."  *Id*.  Plaintiffs also repeated their assertion that, because they "were not parties in any of the cases addressed in the *Fairholme* decision, that decision is not collateral estoppel or *res judicata*, but instead is merely binding precedent."  *Id*. at 2 n.1.

On February 28, 2023, the Court lifted the stay of proceedings in this case.  ECF No. 25.

On March 10, 2023, the Court accepted plaintiffs' first amended complaint for filing, but struck

plaintiffs' attempt to modify the first amended complaint via a notice of errata.  ECF No. 27.  On

March 24, plaintiffs filed a motion for leave to file a second amended complaint, explaining that

the filing would clarify that they "seek to represent both preferred and common stock classes for

each GSE."  ECF No. 28 at 1.  The Court granted the motion on March 27, 2023.  ECF No. 29.

On April 3, 2023, plaintiffs filed their second amended complaint.  ECF No. 30.  It pleads

11 counts:  the same nine from the original complaint, plus two unjust enrichment claims, one

"on behalf of all shareholder classes" and the other derivatively on behalf of Fannie Mae.  ECF

No. 30 ¶¶ 139-240.  In its motion for leave to file the second amended complaint, plaintiffs again

acknowledged that every claim they advance must be dismissed under binding Federal Circuit

precedent.  ECF No. 28 at 3.  Plaintiffs dispute that their claims are barred by issue or claim

preclusion, however.  *Id*. at 3-4 n.3.  We disagree.  As we noted above, therefore, preclusion will

be the focus of this motion.  In addition, although the parties agree that binding precedent also

requires dismissal of their claims, we will also briefly explain why that is so for each claim.

<u>ARGUMENT</u>

I.   <u>Standard Of Review</u>

A.   <u>Rule 12(b)(1)</u>

"Jurisdiction is a threshold issue and a court must satisfy itself that it has jurisdiction to

hear and decide a case before proceeding to the merits."  *Ultra-Precision Mfg., Ltd. v. Ford

Motor Co.*, 338 F.3d 1353, 1356 (Fed. Cir. 2003) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*,

304 F.3d 1235, 1241 (Fed. Cir. 2002)); RCFC 12(b)(1).  If the Court determines that "it lacks

jurisdiction over the subject matter, it must dismiss the claim."  *Matthews v. United States*, 72

Fed. Cl. 274, 278 (2006); RCFC 12(h)(3).

"[C]laims brought in the Court of Federal Claims under the Tucker Act are 'barred unless the petition thereon is filed within six years after such claim first accrues.' The six-year statute of limitations . . . is a jurisdictional requirement for a suit in the Court of Federal Claims." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006) (quoting 28 U.S.C. § 2501).

      B.    <u>Rule 12(b)(6)</u>

Rule 12(b)(6) requires dismissal when a complaint does not plausibly give rise to an entitlement to relief. RCFC 12(b)(6). To avoid dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The Court should dismiss if the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially implausible if it does not permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations "that are 'merely consistent with' a defendant's liability" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, when the complaint "indicate[s] the existence of an affirmative defense that will bar the award of any remedy," the complaint should be dismissed pursuant to Rule 12(b)(6). *Corrigan v. United States*, 82 Fed. Cl. 301, 304 (2008) (internal quotations and citations omitted). This Court has held that the United States properly raises a defense of claim preclusion (res judicata) or issue preclusion (collateral estoppel) on a Rule 12(b)(6) motion. *See Avant*

*Assessment, LLC v. United States*, 159 Fed. Cl. 632, 637 (2022) (claim preclusion); *Copar Pumice Co. v. United States*, 112 Fed. Cl. 515, 527 (2013) (citing *Lewis v. United States*, 99 Fed. Cl. 772, 781 (2011) (both)).

## II.    Preclusion Bars Many Of Plaintiffs' Claims

As we have explained above, the Federal Circuit has already found that several claims substantively identical to those that plaintiffs present here fail as a matter of law.  *Fairholme*, 26 F.4th at 1287-304.  Plaintiffs accept that the Court must dismiss their claims under binding Federal Circuit precedent in *Fairholme* and other cases.  *E.g.*, ECF No. 24 at 2, ECF No. 28 at 3. We agree.  Plaintiffs, however, go on to allege that, because they "were not parties in any of the cases addressed in the *Fairholme* decision, that decision is not collateral estoppel or *res judicata*, but instead is merely binding precedent."  ECF No. 24 at 2 n.1.  This is not correct.  Like the plaintiffs whose derivative claims the Federal Circuit addressed in *Fairholme*, plaintiffs in these cases are shareholders advancing many of these same claims derivatively on behalf of the Enterprises, which are the real parties in interest.  Because these claims that belong to the Enterprises have already been conclusively rejected when asserted derivatively by shareholders, they cannot be relitigated here.

### A.    Res Judicata Principles – Issue And Claim Preclusion Generally

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  "Claim preclusion requires (1) an identity of parties or their privies, (2) a final judgment on the merits of the first suit, and (3) the later claim to be based on the same set of transactional facts as the first claim such that the later claim should have been

litigated in the prior case." *Bowers Inv. Co., LLC v. United States*, 695 F.3d 1380, 1384 (Fed. Cir. 2012) (citation omitted).

Similarly, issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892.  Unlike claim preclusion, which requires a final judgment on the merits in the first suit, issue preclusion can also apply to a court's determination that it lacks jurisdiction to hear a particular claim. *Lea v. United States*, 126 Fed. Cl. 203, 213 (2016) ("[T]his court may be precluded from exercising subject matter jurisdiction in an ongoing action when the same action, based on the same facts, has been previously dismissed on jurisdictional grounds and the jurisdictional flaw that necessitated dismissal on the first suit has not been cured.) (citations omitted).

These doctrines "preclud[e] parties from contesting matters that they have had a full and fair opportunity to litigate," and thus "protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (citation and internal quotation marks omitted).

B.    Preclusion In Shareholder Derivative Suits

Although plaintiffs allege that they "were not parties in any of the cases addressed in the *Fairholme* decision," ECF No. 24 at 2 n.1, "a judgment rendered in a shareholder-derivative lawsuit will preclude subsequent litigation [of that issue] by the corporation and its shareholders." *Cottrell v. Duke*, 737 F.3d 1238, 1243 (8th Cir. 2013); *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) ("[I]n shareholder derivative actions arising under [Federal Rule of Civil Procedure] 23.1, parties and their privies include the corporation and all nonparty

shareholders.").  This is because "[i]t is a matter of black-letter law that the plaintiff in a

derivative suit represents the corporation, which is the real party in interest."  *In re Sonus*

*Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 63 (1st Cir. 2007) (citation omitted)

(rejecting assertion that plaintiffs lacked privity with plaintiffs in a prior derivative action);

*Cottrell*, 737 F.3d at 1242 ("Since the shareholders in the Federal and Delaware proceedings

bring their suits derivatively, Wal–Mart is the true plaintiff in interest in both proceedings.");

*United States v. LTV Corp.*, 746 F.2d 51, 53 n.5 (D.C. Cir. 1984) ("[J]udgments in [shareholder's

derivative suits] bind shareholders . . . .") (citations omitted).

Of course, this rule is "subject to the important proviso that the shareholder must fairly

and adequately represent the corporation."  *Sonus Networks*, 499 F.3d at 64.  Based on this

proviso, the Court previously rejected our argument that issue preclusion barred plaintiffs from

relitigating whether HERA's Succession Clause barred their derivative claims, because plaintiffs

had already litigated that issue in the *Perry* cases.  *Fairholme Funds, Inc. v. United States*, 147

Fed. Cl. 1, 47-48 (2019), *aff'd in part, rev'd in part,* 26 F.4th 1274.  This Court determined that,

because the district court in *Perry I* found that the plaintiffs there lacked capacity to litigate

derivative claims on behalf of Fannie Mae, "the decision affecting those litigants has no bearing

on [Fannie] or the rights of the other shareholders who were not parties to that suit."  *Id.* at 48.

The Federal Circuit, however, disagreed in *Fairholme*, holding that the interests of

shareholders were "aligned" on the issue of whether HERA's Succession Clause bars all non-

constitutional derivative shareholder suits, and that the class plaintiffs in *Perry I* and *Perry II*

acted in a representative capacity.  *Fairholme*, 26 F.4th at 1300.  The Federal Circuit held that

"the pure legal question of whether HERA's Succession Clause bars all non-constitutional

derivative shareholder claims is not applicable only to certain shareholders . . . instead, [it]

applies to any shareholder attempting to bring a derivative claim on the Enterprises' behalf." *Id.* at 1301.   The Federal Circuit, therefore, held that the plaintiff who brought expressly derivative claims, Andrew T. Barrett, was adequately represented by the class plaintiffs in *Perry I* and *II* and, therefore, that his non-constitutional claims were precluded*. Id.*

Likewise here, plaintiffs, who bring the same expressly derivative claims advanced by Mr. Barrett, were adequately represented by the class plaintiffs in *Perry I* and *II*, according to the same analysis.   As alleged owners of Enterprise stock, plaintiffs, like Mr. Barrett, "fall[] under the class described in the *Perry* cases."   *Fairholme*, 26 F.4th at 1301; *see* Second Am. Compl. ¶¶ 18-21.   Moreover, like Mr. Barrett and the *Perry* plaintiffs, plaintiffs here bring many of their claims derivatively on behalf of the Enterprises.   They do so expressly in Count IX, Second Am. Compl. ¶¶ 215-22.

In addition, the constitutional claims that plaintiffs purport to bring directly have been held by the Federal Circuit to be substantively derivative.   *Fairholme*, 26 F.4th at 1287-92. Unlike his non-constitutional claims, the Federal Circuit did not rely on collateral estoppel or HERA's Succession Clause in analyzing Mr. Barrett's derivative constitutional claims.   Instead, the Federal Circuit determined on the merits that, even assuming that a shareholder plaintiff could assert them derivatively, these takings and illegal exaction claims failed as a matter of law. *Fairholme*, 26 F. 4th at 1301-04.   The Court thus rejected these claims as asserted on behalf of the Enterprises, the true parties in interest both for Mr. Barrett's derivative constitutional claims and for those of plaintiffs here.   Accordingly, plaintiffs are barred from relitigating claims and issues that have been resolved against shareholders proceeding derivatively or against the class plaintiffs in the *Perry* cases.

C.      Plaintiffs' Constitutional Claims Are Derivative And Precluded By *Fairholme*

In *Fairholme*, the Federal Circuit rejected on the merits as a matter of law takings and illegal exaction claims brought by an Enterprise shareholder derivatively on behalf of the Enterprises.  26 F.4th at 1283, 1301-04.  The Court also conclusively determined that these claims could not be brought by shareholders directly, as the claims are substantively derivative. *Id*. at 1287-93.  Because the Federal Circuit has already resolved these claims against shareholders proceeding on behalf of the Enterprises, plaintiffs here, who are also shareholders asserting the same claims on behalf of the Enterprises, are precluded from relitigating the claims.

Count IX of plaintiffs' second amended complaint alleges, derivatively on behalf of Fannie Mae, that the Third Amendment "appropriated and illegally exacted the property of Fannie Mae."  Second Am. Compl. ¶ 217.  The Federal Circuit rejected substantively identical derivative claims in *Fairholme*, 26 F. 4th at 1301-03.  The Court held that "[b]ecause *the Enterprises* lacked the right to exclude the government from their net worth after the passage of HERA, and especially after the imposition of the conservatorship, they had no investment-backed expectation that the FHFA would protect their interests and not dilute their equity."  *Id*. at 1303 (emphasis added).  The Federal Circuit held that Mr. Barrett's derivative takings claim, therefore, failed as a matter of law, irrespective of whether he possessed standing to assert it.[4]

_____

   [4] Before determining that Mr. Barrett's derivative takings and illegal exaction claims failed as a matter of law for other reasons, the Federal Circuit held that Mr. Barrett was not collaterally estopped from asserting these claims "[b]ecause the *Perry II* court never decided any constitutional claims."  26 F.4th at 1301.  Respectfully, however, and to preserve this issue in the event of further review, we disagree.  Issue preclusion applies "even if the issue recurs in the context of a different claim."  *Taylor*, 553 U.S. at 892.  The legal "issue" in question is whether HERA's Succession Clause bars shareholders from bringing derivative claims on behalf of the Enterprises.  The district court in *Perry Capital* held that it does, barring relitigation of that question by shareholders here.  70 F. Supp. 3d at 229-30.  The legal issue is the same whether it arises in the context of a constitutional or non-constitutional claim, so preclusion applies in either

18

The Federal Circuit's conclusion focused on the ability of the Enterprises, the true parties in interest, to assert a takings claim based on the facts alleged. In Count IX, plaintiffs also assert their substantively indistinguishable takings claim derivatively on behalf of Fannie Mae and, thus, this is the same claim that the Federal Circuit has already rejected. Plaintiffs may not relitigate the claim here.

Count IX of plaintiffs' second amended complaint also pleads a derivative illegal exaction claim substantively identical to the one that the Federal Circuit examined in *Fairholme*. Second Am. Compl. ¶¶ 229-37. As the Federal Circuit explained, not only does this claim fail for the same reason as the derivative takings claim, but additional reasons also doom this claim as a matter of law. *Fairholme*, 26 F. 4th at 1303-04. Specifically, the Federal Circuit held that the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761, 1775 (2021), made clear that derivative shareholders could not state a plausible illegal exaction claim based on the Third Amendment. *Fairholme*, 26 F. 4th at 1304. As the Federal Circuit recognized, the Supreme Court in *Collins* established that "when the FHFA acts as a conservator, it may aim to rehabilitate the [Enterprises] in a way that, while not in the best interests of the [Enterprises], is beneficial to the [FHFA] and, by extension, the public it serves." *Id*. (quoting *Collins*, 141 S. Ct. at 1776). *Collins*, therefore, established that a derivative shareholder "cannot plausibly allege an illegal exaction claim predicated on his contention that adopting the net worth sweep fell outside the FHFA's statutory authority." *Fairholme*, 26 F. 4th at 1304. The Federal Circuit's conclusion focused on the inability of the Enterprises, the true parties in interest, to assert an illegal exaction claim. Plaintiffs also assert their substantively indistinguishable illegal exaction claim

---

instance. Therefore, plaintiffs are barred by the *Perry* cases from relitigating whether HERA bars them from pursuing derivative claims on behalf of the Enterprises, irrespective of the claim under which that issue arises.

derivatively on behalf of Fannie Mae and, thus, this is the same claim that the Federal Circuit has already rejected.  Plaintiffs may not relitigate this claim here.

Moreover, although plaintiffs purport to bring the constitutional claims in Counts I, II, and III directly, the Federal Circuit has already conclusively determined that each of these claims brought by shareholders is substantively derivative.  *Id*. at 1287-93.  The Federal Circuit's conclusion that the constitutional claims are derivative in nature "is not applicable only to certain shareholders," but applies to any shareholder attempting to bring these claims directly.  *See id*. at 1301.  These substantively derivative claims belong to the Enterprises and, thus, shareholders are precluded from relitigating the Federal Circuit's clear conclusion that they fail as a matter of law when brought directly by shareholders.

Accordingly, the takings and illegal exaction claims in plaintiffs' second amended complaint—in Counts I, II, III, and IX—are all derivative.  As such, they are all precluded by the Federal Circuit's decision in *Fairholme* rejecting these same derivative takings and illegal exaction claims.

D.     Plaintiffs' Derivative, Non-Constitutional Claims Are Precluded By Both The *Fairholme* And *Perry* Cases

In Count IX of plaintiffs' second amended complaint they state that if any of the claims that they purport to bring directly are held to be derivative in nature, they, in the alternative, bring these claims derivatively on behalf of Fannie Mae.   Second Am. Compl. ¶ 216.  Plaintiffs do not make clear to which of their claims this assertion might apply.  In the event that they attempt to bring any of their non-constitutional claims derivatively, however, the Federal Circuit, held that "the *Perry II* court affirmatively answered the question of whether HERA's Succession Clause bars all non-constitutional derivative shareholder suits."  *Fairholme*, 26 F.4th at 1300.  The Court held that Mr. Barrett was precluded from relitigating whether HERA barred such a

suit and, thus, his non-constitutional derivative claims, which included a derivative breach of fiduciary duty claim, could not proceed.  *Id*. at 1299-301.  Accordingly, plaintiffs here, like Mr. Barrett, are precluded by the *Perry* cases from relitigating the issue of whether HERA bars them from bringing such a suit derivatively, to the extent that they have attempted to do here. That question has already been resolved against shareholders in the *Perry* cases, and plaintiffs may not relitigate the issue here.  This same rationale also bars Count XI of the second amended complaint for another non-constitutional claim, unjust enrichment, which plaintiffs also purport to bring derivatively on behalf of Fannie Mae.

Moreover, not only does issue preclusion based on the *Perry* cases bar plaintiffs under the same rationale that the Federal Circuit advanced in finding Mr. Barrett's substantively identical claim to be precluded, but the Federal Circuit's holding itself acts to bar plaintiffs' claims here.  A dismissal on preclusion grounds is a decision on the merits which itself has preclusive effect in subsequent actions.  *Ramos v. United States*, 112 Fed. Cl. 79, 86 (2013).  "[D]ismissal of a second action on the ground that it is precluded by a prior action is itself effective as res judicata, and a judgment on the merits that forecloses further litigation of the preclusion question in a third action."  18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4435 (3d ed. 2019).  Notably, following the Federal Circuit's decision in *Fairholme*, this Court dismissed all of the claims in that case, including all of Mr. Barrett's derivative claims, with prejudice.  *Fairholme Funds, Inc. v. United States*, No. 13-465C, ECF Nos. 475, 476.

Finally, plaintiffs' breach of fiduciary duty claim, Count VIII, is barred by issue preclusion even if brought directly.  The Federal Circuit has rejected a nearly identical breach of fiduciary duty claim, which other shareholders purported to bring directly, for lack of subject

matter jurisdiction.  *Fairholme*, 26 F.4th at 1296-99.  The Federal Circuit held that no fiduciary

duty to shareholders could be grounded in statute through HERA or in contract through the

PSPAs.  *Id*. at 1297-99.  "[P]rinciples of issue preclusion may apply to questions of jurisdiction."

*Lea v. United States*, 126 Fed. Cl. 203, 213 (2016) (citing *Citizens Elecs. Co., Ltd. v. OSRAM

GmBH*, 225 F. App'x 890, 893 (Fed. Cir. 2007); *Amgen Inc, v. U.S. Int'l Trade Comm'n*, 902

F.2d 1532, 1536 n.5 (Fed. Cir. 1990).  Under the doctrine of issue preclusion, "this court may be

precluded from exercising subject matter jurisdiction in an ongoing action when the same action,

based on the same facts, has been previously dismissed on jurisdictional grounds and the

jurisdictional flaw that necessitated dismissal on the first suit has not been cured."  *Lea*, 126 Fed.

Cl. at 213.  Here, the flaws that led the Federal Circuit to hold in *Fairholme* that shareholders

had not pleaded a breach of fiduciary duty claim within this Court's jurisdiction lead to that same

conclusion with regard to Count VIII of plaintiffs' second amended complaint.  As in *Fairholme*,

plaintiffs here allege that HERA created a fiduciary relationship between FHFA and Enterprise

shareholders.  *Fairholme*, 26 F.4th at 1296-97; Second Am. Compl. ¶ 207.  The Federal Circuit,

however, disagreed.  *Fairholme*, 26 F.4th at 1297.  Plaintiffs are precluded from relitigating that

conclusion here.

III.    *Fairholme* Binds This Court And Requires Dismissal Of Counts I-IX Of Plaintiffs'
        Second Amended Complaint

       As we have explained above, plaintiffs freely acknowledge that the Federal Circuit's

decision in *Fairholme* "constitutes binding precedent that requires this Court to dismiss the [first

nine] claims advanced in the above-captioned case."  ECF No. 24 at 2; *see also* ECF No. 28 at 3.

We agree.  For clarity, we briefly outline below the claims that must be dismissed as a

consequence of each of the Federal Circuit's holdings in *Fairholme*.

A.     Counts I-III Are Substantively Derivative And Belong To The Enterprises;
Plaintiffs May Not Bring These Claims On Their Own Behalf

In *Fairholme*, the Federal Circuit held that shareholders' purportedly direct takings and illegal exaction claims did not state claims upon which relief may be granted because they were substantively derivative and, thus, belonged to the Enterprises.  26 F.4th 1288-92.  The Court explained that "only 'shareholder[s] with a direct, personal interest in a cause of action,' rather than 'injuries [that] are entirely derivative of their ownership interests' in a corporation, may bring a direct shareholder action."  *Id*. at 1291 (quoting *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336-37 (1990)).  The Federal Circuit agreed with this Court's conclusion that shareholders' takings and illegal exaction claims were not independent of alleged harm to the corporation, and, thus, were substantively derivative.  26 F.4th at 1291-92.  When brought directly by shareholders, therefore, the Federal Circuit held that these claims fail as a matter of law.  *Id*. at 1292.

Plaintiffs' takings and illegal exaction claims in Counts I and III here are identical in substance to the claims that the Federal Circuit rejected in *Fairholme*, and this Court is bound to dismiss them pursuant to that precedent, as plaintiffs acknowledge.  *Compare, e.g.,* Second Am. Compl. ¶¶ 139-47, 155-64 *with Fairholme Funds, Inc. v. United States*, No. 13-465C, ECF No. 422 ¶¶ 166-74, 193-202; *Cacciapalle v. United States*, No. 13-466C, ECF No. 67 ¶¶ 123-31, 139-48.

Additionally, the Federal Circuit in *Fairholme* also rejected essentially the same claim contained in Count II in plaintiffs' second amended complaint, which alleges that HERA's transfer to FHFA of shareholders' right to bring derivative claims constituted a separate taking.  26 F.4th at 1292-93.  The Court held that "[t]here is simply no claim embedded in that count upon which relief may be granted."  *Id*. at 1293.  Count II of plaintiffs' second amended

complaint is nearly identical to the count the Federal Circuit rejected, Count II in the *Cacciapalle* amended complaint.  *Compare* Second Am. Compl. ¶¶ 148-54 *with Cacciapalle v. United States*, No. 13-466C, ECF No. 67 ¶¶ 123-31, 132-38.

Separately, even if plaintiffs could pursue their takings claims directly, this Court previously found that shareholders that did not own Enterprise stock on the date of the Third Amendment on August 17, 2012, do not possess standing to litigate a direct takings claim. *Fairholme*, 147 Fed. Cl. at 43-45, *aff'd in part, rev'd in part,* 26 F.4th 1274.  Plaintiffs' pleadings acknowledge that some plaintiffs purchased their Enterprise shares after that date. Second Am. Compl. ¶¶ 21, 130 (referring to "successors in interest" of shareholders on the date of the Third Amendment), 131 (referring to current owners of Enterprise stock); *see also* Compl., ECF No. 1, ¶ 18.  Accordingly, any of the plaintiffs that did not own Enterprise shares on August 17, 2012 do not possess standing to assert a takings claim.

B.     Plaintiffs' Contract Claims, Asserted In Counts IV-VII, Fail As A Matter Of Law

In *Fairholme*, the Federal Circuit held that shareholders' contract claims failed as a matter of law because they did not plausibly allege either privity with the United States or that the shareholders' enjoyed third-party beneficiary status for any express or implied contract between FHFA and the Enterprises.  26 F.4th at 1293-94.  The Federal Circuit also rejected the "creative" argument advanced by the *Cacciapalle* plaintiffs that because FHFA, through HERA's Succession Clause, succeeded to the Enterprises' contractual obligations, privity with the United States was established.  The Federal Circuit held that, "[i]n succeeding to the Enterprises' private contractual agreement with [shareholders], . . . FHFA does not retain its governmental character."  *Id*. at 1295.

Plaintiffs' contract claims rely on this same theory of privity that the Federal Circuit rejected. *See*, *e.g.*, Second Am. Compl. ¶¶ 169 ("FHFA assumed the responsibility to act consistently with the Companies' contractual obligations when it became the Companies' conservator."), 183 ("Since FHFA is a government agency, the Government became a party to the Fannie Mae shareholder contracts when FHFA succeeded to that contract as Fannie Mae's conservator."). Plaintiffs' contract claims, therefore, must be dismissed under the binding precedent established in *Fairholme* because they fail to plausibly allege the breach of a contract between shareholders and the United States.

C.   The Court Does Not Possess Jurisdiction To Entertain Plaintiff's Breach Of Fiduciary Duty Claim In Count VIII

Although a claim for a breach of fiduciary duty is typically a tort claim that is outside this Court's Tucker Act jurisdiction, the Court "has jurisdiction over claims alleging the breach of a fiduciary duty that the government 'specifically accepts by statute or regulation.'" *Fairholme*, 26 F.4th at 1296 (quoting *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015)). In *Fairholme*, however, the Federal Circuit held that shareholders failed to allege a breach of any fiduciary duty that the Government had accepted by statute or regulation or that was grounded in a contract. 26 F.4th at 1296-99. The Federal Circuit held that neither HERA nor the PSPAs imposed a fiduciary duty owed to shareholders by either FHFA or Treasury. *Id*.

Plaintiffs' breach of fiduciary duty claim in Count VIII of the second amended complaint is identical in substance to the claims that the Federal Circuit held were outside this Court's jurisdiction in *Fairholme*. *Compare*, *e.g.*, Second Am. Compl. ¶¶ 206-14 *with Fairholme Funds, Inc. v. United States*, No. 13-465C, ECF No. 422 ¶¶ 223-33; *Cacciapalle v. United States*, No. 13-466C, ECF No. 67 ¶¶ 165-73. Therefore, as plaintiffs acknowledge, this Court must dismiss them pursuant to the Federal Circuit's binding precedent.

25

      D.      To The Extent That Count IX Pleads Non-Constitutional Derivative Claims, They Are Barred By HERA's Succession Clause

It is unclear which claims plaintiffs intend to plead derivatively on behalf of Fannie Mae in Count IX.  To the extent that any non-constitutional claims are contained therein, the Federal Circuit rejected such claims in *Fairholme* when it held that shareholders had already litigated and lost the issue of whether HERA's Succession Clause bars non-constitutional shareholder derivative claims in Federal courts in the District of Columbia.  26 F.4th at 1299-1301 (citing *Perry I*, 70 F. Supp. 3d at 229-30; *Perry II*, 864 F.3d at 623-25).  The Federal Circuit noted that the D.C. Circuit, in *Perry II,* held that "without exception, HERA's Succession Clause barred non-constitutional derivative shareholder suits."  *Fairholme*, 26 F.4th at 1299 (citing *Perry II*, 864 F.3d at 623–25).  The Federal Circuit held that the class plaintiffs in the *Perry* cases adequately represented the interests of any shareholder attempting to bring such claims derivatively.  *Fairholme*, 26 F.4th at 1300-01.  The Federal Circuit also held that shareholders are collaterally estopped from relitigating the issue and, thus, bound by the conclusion that HERA's Succession Clause bars shareholders from advancing non-constitutional derivative claims.  *Id*. at 1301.

     Accordingly, to the extent that plaintiffs bring any non-constitutional derivative claims in Count IX, they, like the shareholder in *Fairholme*, are precluded from relitigating this issue and are barred by HERA's Succession Clause from advancing any such claims.

      E.      Plaintiffs' Derivative Takings And Illegal Exaction Claims In Count IX Fail As A Matter Of Law

In *Fairholme*, the Federal Circuit declined to find that shareholders were also precluded from bringing derivative constitutional claims because constitutional claims were not decided in

*Perry II*.[5] 26 F.4th at 1301.  The Federal Circuit, however, held that these claims failed on the

merits as a matter of law.  The Court held that shareholders' derivative takings claims failed

because the Enterprises lacked the right to exclude the Government from their property,

including their net worth.  *Id*. at 1302-03.  The Enterprises, therefore, lacked a cognizable

property interest on which shareholders could base a derivative takings claim.  *Id*. at 1303.

The Federal Circuit held that shareholders could not state a derivative illegal exaction

claims for this same reason.  *Id*.  Moreover, because the Supreme Court held in *Collins* that the

Third Amendment fell within FHFA's authority, the Federal Circuit held that no shareholder

could state a plausible illegal exaction claim predicated on the contention that the Third

Amendment exceeded FHFA's statutory authority.  *Fairholme*, 26 F.4th at 1304.

As plaintiffs acknowledge, their derivative takings and illegal exaction claims in Count

IX are substantively indistinguishable from the derivative claims that the Federal Circuit rejected

in *Fairholme*, and this Court is bound to dismiss them pursuant to that precedent.  *Compare*

Second Am. Compl. ¶¶ 215-22, *with Fairholme Funds, Inc. v. United States*, No. 13-465C, ECF

No. 422 ¶¶ 175-92, 203-22.

IV.    As Plaintiffs Acknowledge, Binding Precedent Holds That This Court Does Not Possess
       Jurisdiction To Entertain Their Unjust Enrichment Claims In Counts X And XI

In their amended and second amended complaints, plaintiffs add claims alleging unjust

enrichment, both on behalf of shareholder classes and derivatively on behalf of Fannie Mae.

Second Am. Compl. ¶¶ 223-40.  Plaintiffs freely acknowledge, however, that "binding Federal

Circuit precedent holds that the Court lacks jurisdiction to entertain an unjust enrichment claim

under the Tucker Act."  ECF No. 28 at 1; *see also* ECF No. 24 at 2.  Although plaintiffs have

stated that they "intend to petition for *en banc* review of that precedent," *id*., they have not

_____

[5]  We respectfully disagree; see footnote 4 above.

demonstrated any basis upon which this binding law might be overturned.  Even if they had, this Court remains bound by the clear and consistent conclusion of the Federal Circuit in the cases discussed below, among others, that this Court does not possess jurisdiction to entertain an unjust enrichment claim like those contained in Counts X and XI of plaintiffs' second amended complaint.

Plaintiffs allege that "[a] claim of unjust enrichment is considered a claim based on an implied contract, and thus this Court has jurisdiction to hear such a claim."  Second Am. Compl. ¶ 225.  This is not correct.  Although the Court has jurisdiction to hear claims based on contracts implied in fact, the Supreme Court has been clear that this jurisdiction does not extend to contracts implied in law.  *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996) ("We have repeatedly held that this jurisdiction extends only to contracts either express or implied in fact, and not on contracts implied in law") (citations omitted).  "An unjust enrichment claim is an equitable implied-in-law contract claim."  *Copar Pumice*, 112 Fed. Cl. at 538 (citing *Cross Country Indus., Inc. v. United States*, 231 Ct. Cl. 899, 901 (1982) ("A claim based on unjust enrichment is a claim based on a contract implied in law and we cannot hear it.") (other citation omitted)).  "[C]ontracts based on implied-in-law theory (*i.e.,* a quasi-contract or unjust enrichment theory) do not arise from mutual assent between the parties and, therefore, are not actually contracts but rather legal fictions created by the courts to impose legal duties on one or both parties to prevent injustice."  *Mendez v. United States*, 121 Fed. Cl. 370, 378 n.3 (2015) (citations omitted).  "Such implied-in-law contract scenarios are beyond the purview of the Tucker Act."  *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1327 (Fed. Cir. 1997).

Whether direct or derivative, therefore, this Court does not possess jurisdiction to entertain the unjust enrichment claims contained in Counts X or XI of plaintiffs' complaint.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss plaintiffs' claims, both for lack of subject matter jurisdiction and for failure to state claims upon which relief can be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL:

s/ Elizabeth M. Hosford
FRANKLIN E. WHITE, JR.          ELIZABETH M. HOSFORD
Assistant Director              Assistant Director

RETA E. BEZAK                   s/ Anthony F. Schiavetti
Senior Trial Counsel            ANTHONY F. SCHIAVETTI
                                Senior Trial Counsel
MARIANA T. ACEVEDO              U.S. Department of Justice
Trial Attorney                  Civil Division
                                Commercial Litigation Branch
                                PO Box 480, Ben Franklin Station
                                Washington, D.C. 20044
                                Tel: (202) 305-7572
                                anthony.f.schiavetti@usdoj.gov

September 8, 2023               Attorneys For Defendant

29