# In the United States Court of Federal Claims

No. 18-1124C

(Filed: November 15, 2023)

```
*************************************
WAZEE STREET OPPORTUNITIES        *
FUND IV LP et al.,                *
                                  *
            Plaintiffs,           *
                                  *
v.                                *
                                  *
THE UNITED STATES,                *
                                  *
            Defendant.            *
*************************************
```

Hamish P.M. Hume, Washington, DC, for plaintiffs.

Anthony F. Schiavetti, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY,** Senior Judge

    Plaintiffs are shareholders of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), collectively, "the Enterprises," who challenge the actions of the United States during the conservatorship of the Enterprises. Specifically, plaintiffs take issue with the conservator for the Enterprises amending funding agreements between the Enterprises and the United States Department of the Treasury ("Treasury"). In light of these revisions to the funding agreements, plaintiffs contend that they are due a monetary recovery from the United States. The United States Court of Appeals for the Federal Circuit ("Federal Circuit") recently rejected a number of claims equivalent to those advanced in this case. See Fairholme Funds, Inc. v. United States, 26 F.4th 1274 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 563, and cert. denied sub nom. Barrett v. United States, 143 S. Ct. 562, and cert. denied sub nom. Owl Creek Asia I, L.P. v. United States, 143 S. Ct. 563, and cert. denied sub nom. Cacciapalle v. United States, 143 S. Ct. 563 (2023).

    Defendant moves for dismissal of plaintiffs' claims, relying on the precedent of Fairholme, other binding precedent, and preclusion principles. Plaintiffs agree that this court must dismiss all of the claims in their second amended complaint under binding precedent but disagree with defendant's contention that four of their claims are barred by claim or issue preclusion. As explained below, the court need not resolve the parties' dispute over preclusion because binding precedent compels the dismissal of all of plaintiffs' claims. See Reid v. United States, 167 Fed. Cl. 539, 543 n.1 (2023) (dismissing claims related to the Freddie Mac rescue

solely on precedential grounds and not reaching the parties' arguments regarding preclusion); Fisher v. United States, 167 Fed. Cl. 535, 539 n.2 (2023) (dismissing claims related to the Fannie Mae rescue solely on precedential grounds and not reaching the parties' arguments regarding preclusion).

## I. BACKGROUND

### A. Shareholders Stop Receiving Dividends

Shareholders of Fannie Mae and Freddie Mac experienced changes in the benefits of owning stock in the Enterprises that occurred in the context of a government rescue of the Enterprises. As recounted by the Federal Circuit:

> The Enterprises suffered devastating financial losses in 2008 when the national housing market collapsed. In response, Congress enacted the Housing and Economic Recovery Act of 2008 (HERA). HERA created the Federal Housing Finance Agency (FHFA), an independent agency tasked with regulating the Enterprises and (if necessary) stepping in as conservator or receiver. 12 U.S.C. §§ 4511, 4617. HERA also contains a Succession Clause, which states that the FHFA "shall, as conservator or receiver . . . immediately succeed to [ ] all rights, titles, powers, and privileges of the [Enterprises], and of any stockholder . . . with respect to the [Enterprises] and the assets of the [Enterprises]." Id. § 4617(b)(2)(A)(i).
>
> With the consent of the Enterprises' boards of directors, the FHFA's Director placed the Enterprises into conservatorship in September 2008. The FHFA Director then negotiated preferred stock purchase agreements (PSPAs) with the Department of Treasury (Treasury) in which Treasury agreed to allow the Enterprises to draw up to $100 billion in capital in exchange for: (1) senior preferred non-voting stock having quarterly fixed-rate dividends and an initial liquidation preference of $1 billion and (2) warrants to purchase up to 79.9% of the common stock of each Enterprise at a nominal price.
>
> FHFA and Treasury amended the terms of the original PSPAs in the years that followed. . . . [The Third Amendment implemented] a "net worth sweep" under the PSPAs[, which] replaced the fixed-rate dividend formula with a variable one that required the Enterprises to make quarterly payments equal to their entire net worth, minus a small capital reserve amount. The net worth sweep caused the Enterprises to transfer most, if not all, of their equity to Treasury, leaving no residual value that could be distributed to shareholders.

Fairholme, 26 F.4th at 1282-83 (alterations in first paragraph in original) (citations to appellate joint appendix omitted). The Third Amendment to the PSPAs, the effects of which provide the basis for plaintiffs' claims, was adopted on August 17, 2012. 2d Am. Compl. ¶ 1.

### B. Fannie Mae and Freddie Mac Shareholders File Numerous Suits

As noted by the Federal Circuit, "[s]hareholders launched a series of challenges to the net worth sweep that have worked their way through several fora, including the [United States Court of Appeals for the District of Columbia] Circuit and the Supreme Court [of the United States ("Supreme Court")]." Fairholme, 26 F.4th at 1283. In addition, "[p]arallel to these unsuccessful attempts to undo the net worth sweep, shareholders filed complaints with the [United States Court of Federal Claims ("Court of Federal Claims")]," id., such as the above-captioned case. In one comprehensive opinion, the Federal Circuit resolved nine appeals arising from decisions of the Court of Federal Claims and ruled that shareholder claims based on the net worth sweep, whether they were direct claims or derivative claims brought on behalf of the Enterprises, could not proceed in this court. Id. at 1305.

### C. Procedural History

Plaintiffs present their claims in a "Consolidated Class Action Complaint."[1] 2d Am. Compl. 4. When they filed their original complaint in 2018 there were three named plaintiffs. The first was Wazee Street Opportunities Fund IV LP, "a Delaware limited partnership [that] own[ed] 1,605,000 shares of Fannie Mae common stock that it acquired between December 2016 and November 2017." Compl. ¶ 18. The second was Douglas Whitley, "a resident of North Carolina [who] own[ed] 196 shares of Fannie Mae common stock that he acquired in September 2008." Id. ¶ 19. The third was Lisa Brown, "a resident of Pennsylvania [who] ha[d] owned 11.6568 shares of Freddie [Mac] common stock since at least 2014." Id. ¶ 20.

After a lengthy stay to allow for the resolution of appeals of decisions in related cases before this court, plaintiffs amended their complaint on February 27, 2023. The first amended complaint differed from the original complaint, most obviously, in that plaintiffs' claims were presented in eleven counts as opposed to nine counts, and a fourth named plaintiff was added. The fourth plaintiff was Wazee Street Opportunities Fund V LP, "a Delaware limited partnership [that] own[ed] 615 shares of Fannie Mae common stock, . . . 1,757,244 shares of Fannie Mae preferred stock[,] 615 shares of Freddie Mac common stock, and 4,675 shares of Freddie Mac preferred stock." 1st Am. Compl. ¶ 19. Plaintiffs averred that Wazee Street Opportunities Fund IV LP and Wazee Street Opportunities Fund V LP were both "managed by Wazee Street Capital Management LLC, a Colorado limited liability company." Id. An additional difference between the original complaint and the first amended complaint was that Wazee Street Opportunities Fund IV LP, in 2023, "own[ed] 5,000 shares of Fannie Mae common stock, . . . 1,093,858 shares of Fannie Mae preferred stock[, and] 385 shares of Freddie Mac common stock." Id. ¶ 18.

---

[1] Notably, plaintiffs' counsel in this case brought an earlier class action suit in this court in 2013, Cacciapalle v. United States, No. 13-466C. Pls.' Resp. 1-2. This court's dismissal of Cacciapalle was affirmed by the Federal Circuit in the Fairholme decision. The claims that were asserted in Cacciapalle are again asserted, in nearly identical language, in this suit: Fifth Amendment takings, illegal exaction, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. In essence, then, plaintiffs present eight claims in their second amended complaint that have already been reviewed and rejected by the Federal Circuit in Fairholme.

Approximately one month after plaintiffs filed their first amended complaint, they filed their second amended complaint to correct certain internal inconsistencies and make "clear that the[ir] claims are brought on behalf of all common stock and preferred stock shareholder classes" of the Enterprises.  Pls.' Unopposed Mot. for Leave to File 2d Am. Compl. 1.  At the same time, the parties proposed an agreed-upon briefing schedule for defendant's motion to dismiss.  The court adopted that schedule and granted two agreed-upon enlargements of the deadlines requested by the parties.

The court reserves its description of the claims presented in plaintiffs' second amended complaint for the analysis section of this opinion, other than to note that there are now nine counts in the second amended complaint following plaintiffs' voluntary dismissal of Counts IX and XI on November 2, 2023.  Defendant's motion, brought under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), is now fully briefed.  The parties did not request, nor does the court require, oral argument.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss Under RCFC 12(b)(1)

When considering whether to dismiss a complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  Whether the court has subject matter jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B.  Motion to Dismiss Under RCFC 12(b)(6)

A claim is subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief.  Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  To avoid dismissal under the rule, a plaintiff must include in his complaint "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In ruling on such a motion, the court must "accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56).

## III.  ANALYSIS

The primary issue before the court is whether the Federal Circuit's decision in Fairholme, issued several years after this suit was filed, and other binding precedent compel the dismissal of plaintiffs' claims.  In its motion, defendant argues that dismissal of plaintiffs' claims is mandated by this precedent.  Plaintiffs agree, but nevertheless continue to pursue their claims with the hope of persuading the appellate courts to review and overturn the precedent that currently binds this court.  See Pls.' Resp. 1 ("Plaintiffs intend to seek review of those binding precedents by the en

banc Federal Circuit and/or the Supreme Court."). As set forth below, the court concurs with the parties that binding precedent requires the dismissal of plaintiffs' claims.

As for the parties' arguments concerning preclusion, i.e., whether preclusion provides an alternative reason to dismiss Counts I, II, III, and VIII of the second amended complaint, the court exercises its discretion to dismiss these four claims on precedential grounds rather than on both precedential and preclusion grounds. Accord Arunachalam v. United States, No. 16-358C, 2020 WL 5412752, at *10 (Fed. Cl. Sept. 9, 2020) (declining to address the defendant's alternative argument regarding collateral estoppel because the plaintiff's patent infringement claim was barred by Federal Circuit precedent), appeal dismissed, No. 2021-1410, 2021 WL 2470305 (Fed. Cir. June 4, 2021); Listwa v. United States, 126 Fed. Cl. 565, 570 n.2 (2016) (dismissing suit on statute of limitations grounds and not reaching the defendant's preclusion arguments); Lakewood Assocs. v. United States, 45 Fed. Cl. 320, 338 (1999) (acknowledging the defendant's collateral estoppel argument but relying instead on the doctrine of ripeness to dismiss the plaintiff's claim); cf. Timken Co. v. United States, 218 Ct. Cl. 633, 634 (1978) (declining to decide whether collateral estoppel applied because the court "require[d] no compulsion to follow" the prior holdings cited by the plaintiff). Consequently, the court will not address the parties' arguments regarding preclusion as it addresses each extant count of the second amended complaint.

### A. Constitutional Claims – Counts I-III

In Count I, plaintiffs assert that they "owned fully vested property rights in the form of the rights to receive dividends" and other rights appurtenant to their stock ownership, 2d Am. Compl. ¶ 141, and that these rights were taken by the government without just compensation in the net worth sweep, id. ¶¶ 144-147. Thus, plaintiffs assert a takings claim under the Fifth Amendment to the United States Constitution. Id. ¶¶ 140-147. However, the Federal Circuit held in Fairholme that the shareholders' primary takings claim, which also was founded on the net worth sweep, could not proceed because it was, in essence, a corporate overpayment claim that belonged to the Enterprises, not the shareholders. 26 F.4th at 1289. The Federal Circuit further held that the appellants' takings claim should have been dismissed for failure to state a claim upon which relief may be granted. Id. at 1292.

The takings claim asserted in Count I is indistinguishable from the aforementioned takings claim rejected in Fairholme. Plaintiffs acknowledge that this claim is foreclosed by the binding precedent of Fairholme. Accordingly, the court dismisses Count I for failure to state a claim upon which relief can be granted.

In Count II, plaintiffs assert another takings claim, one founded on their property right "to protect their investment by filing certain causes of action, including derivative lawsuits and claims seeking injunctive and declaratory relief." 2d Am. Compl. ¶ 150. The taking occurred, according to plaintiffs, "by virtue of any court's holding that certain HERA provisions block legal actions needed to fully remedy the harm caused by the Third Amendment." Id. ¶ 153. One appellant before the Federal Circuit, Joseph Cacciapalle, asserted this type of claim in Count II of his amended complaint and argued, on appeal, that it was HERA itself, as interpreted by federal courts, that had effected a regulatory taking of his property interest. Fairholme, 26 F.4th

at 1292.  The Federal Circuit examined Mr. Cacciapalle's takings claim from a number of perspectives and rejected it because there was "simply no claim embedded in that count upon which relief may be granted."  Id. at 1293.

There is no meaningful distinction between the claim in Count II of plaintiffs' second amended complaint and the takings claim in Count II of Mr. Cacciapalle's amended complaint that was rejected by the Federal Circuit.  Plaintiffs acknowledge that their claim is foreclosed by the binding precedent of Fairholme.  Accordingly, the court dismisses Count II for failure to state a claim upon which relief can be granted.

In Count III, plaintiffs assert an illegal exaction claim, stating that "[b]y imposing the Net Worth Sweep, the Government expropriated Plaintiffs' vested property rights and now has the Plaintiffs' money in its pocket."  2d Am. Compl. ¶ 160.  However, the Federal Circuit held in Fairholme that the shareholders' illegal exaction claim, which also was founded on the net worth sweep, could not proceed because it was, in essence, a corporate overpayment claim that belonged to the Enterprises, not the shareholders.  26 F.4th at 1289.  The Federal Circuit further held that the appellants' illegal exaction claim should have been dismissed for failure to state a claim upon which relief may be granted.  Id. at 1292.

The illegal exaction claim asserted in this suit is indistinguishable from the illegal exaction claim rejected in Fairholme.  Plaintiffs acknowledge that their claim is foreclosed by the binding precedent of Fairholme.  Accordingly, the court dismisses Count III for failure to state a claim upon which relief can be granted.

### B.  Contract Claims – Counts IV-VII

In Counts IV and VI, plaintiffs assert that the shareholders of Freddie Mac (Count IV) and Fannie Mae (Count VI) possess contract rights by virtue of their stock certificates, state corporation law, or other authorities, and that FHFA and Treasury breached and repudiated plaintiffs' contracts by entering into the Third Amendment.  2d Am. Compl. ¶¶ 171, 194.  However, the Federal Circuit held in Fairholme that all of the breach-of-contract claims asserted by the shareholders should be dismissed.  26 F.4th at 1293-96.  Some of the breach claims foundered because the shareholders did not establish that they were third-party beneficiaries of a contract between FHFA and the Enterprises, so they failed to state a claim upon which relief can be granted.  Id. at 1293-94.  One shareholder, Mr. Cacciapalle, argued that his contract rights were based on a contract between FHFA, as conservator for the Enterprises, and the shareholders, but his breach claim could not proceed because he lacked privity with the United States.  Id. at 1294-96.  His breach claim was correctly dismissed by this court on standing grounds.  Id. at 1296.

Plaintiffs' breach-of-contract claims in this suit most closely resemble the breach claim brought by Mr. Cacciapalle.  Here, too, plaintiffs assert that FHFA, as conservator, succeeded to the contractual obligations that the Enterprises owed their shareholders.  2d Am. Compl. ¶¶ 166-172, 182-198.  Plaintiffs concede that their breach-of-contract claims in Counts IV and VI are barred by the binding precedent of Fairholme.  Accordingly, the court dismisses Counts IV and VI for lack of standing.

In Counts V and VII, plaintiffs assert that the shareholders of Freddie Mac (Count V) and Fannie Mae (Count VII) contracted with the government by virtue of their stock certificates, state corporation law, or other authorities, and that FHFA and Treasury "breached the implied covenant of good faith and fair dealing" inherent in the shareholders' contracts by entering into the Third Amendment. 2d Am. Compl. ¶¶ 179, 203. However, the Federal Circuit held in Fairholme that Mr. Cacciapalle's claim of the same nature could not proceed because he lacked privity with the United States. 26 F.4th at 1294-96. Thus, his claim regarding the implied covenant of good faith and fair dealing was correctly dismissed by this court on standing grounds. Id. at 1296.

For the privity issue, plaintiffs' claims regarding the implied covenant of good faith and fair dealing are indistinguishable from the same claim asserted by Mr. Cacciapalle. Plaintiffs concede that their claims for breach of the implied covenant of good faith and fair dealing in Counts V and VII are foreclosed by the binding precedent of Fairholme. Accordingly, the court dismisses Counts V and VII for lack of standing.

### C. Breach-of-Fiduciary-Duty Claim – Count VIII

In Count VIII, plaintiffs assert that "by entering the Net Worth Sweep, FHFA violated its fiduciary duty" to them. 2d Am. Compl. ¶ 213. However, the Federal Circuit held in Fairholme that the shareholders' breach-of-fiduciary-duty claims were correctly dismissed for lack of subject matter jurisdiction because FHFA owed no fiduciary duty to the shareholders of the Enterprises. 26 F.4th at 1297-99. Plaintiffs acknowledge that this claim is foreclosed by the binding precedent of Fairholme. Accordingly, the court dismisses Count VIII for lack of subject matter jurisdiction.

### D. Unjust Enrichment Claim – Count X

In Count X, plaintiffs allege that they "have a valid claim of unjust enrichment against the United States Treasury" as a result of the net worth sweep. 2d Am. Compl. ¶ 233. However, an unjust enrichment claim, which is a claim for equitable relief often associated with contracts implied in law, is outside the jurisdiction of this court. E.g., 8x8, Inc. v. United States, 854 F.3d 1376, 1383 n.7 (Fed. Cir. 2017) (citing Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997); Cleveland Chair Co. v. United States, 557 F.2d 244, 246 (Ct. Cl. 1977)). Plaintiffs do not dispute that binding precedent compels the dismissal of this claim. Accordingly, the court dismisses Count X for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion to dismiss. The court dismisses Counts I, II, and III of plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted; Counts IV, V, VI, and VII for lack of standing; and Counts VIII and X for lack of subject matter jurisdiction. Because all of the claims in plaintiffs' second amended complaint have been dismissed, plaintiffs' motion for class certification is **MOOT**. The clerk is directed to enter judgment and close this case. No costs.

**IT IS SO ORDERED.**

                                              <u>s/ Margaret M. Sweeney</u>
                                              MARGARET M. SWEENEY
                                              Senior Judge